Slip Op. 12 -22

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LIBERTY FROZEN FOODS PRIVATE, LIMITED, *et al.*,<br><br>      Plaintiffs,<br><br>    v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>    and<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE, AMERICAN SHRIMP PROCESSORS ASSOCIATION, and DEVI SEA FOODS LIMITED,<br><br>      Defendant-Intervenors. | Before: Donald C. Pogue, Chief Judge<br><br>Consol.[1] Court No. 10-00231 |

OPINION

[Affirming Department of Commerce's remand redetermination]

Dated: February 21, 2012

    Lizbeth R. Levinson and Ronald M. Wisla, Kutak Rock LLP of Washington DC, for the Plaintiffs Liberty Frozen Foods Private, Limited; Devi Marine Food Exports Private, Limited; Kader Exports Private, Limited; Kader Investment and Trading Company, Private, Limited; Liberty Oil Mills Limited; Premier Marine Products; and Universal Cold Storage Private, Limited.

    Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With him on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director,

---

[1] This action was consolidated with Court No. 10-00237, which was subsequently dismissed. Order, Mar. 1, 2011, ECF No. 53.

and Patricia M. McCarthy, Assistant Director.  Of counsel on the briefs was Scott D. McBride, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

    Andrew W. Kentz, Jordan C. Kahn, Nathaniel J. Maandig Rickard, and Kevin M. O'Connor, Picard Kentz & Rowe LLP, of Washington, DC, for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

    Terence P. Stewart, Geert M. De Prest and Elizabeth J. Drake, Stewart and Stewart, of Washington DC, and Edward T. Hayes, Leake & Andersson, LLP, of New Orleans, LA, for the Defendant-Intervenor American Shrimp Processors Association.

    Ronald M. Wisla, Kutak Rock LLP, of Washington, DC, for the Defendant-Intervenor Devi Sea Foods Limited.

**Pogue, Chief Judge**: This case returns to court following remand by Liberty Frozen Foods Pvt., Ltd. v. United States, __ CIT __, 791 F. Supp. 2d 1249 (2011) ("Liberty I").  In Liberty I, the Court reviewed the final results of the fourth administrative review of certain frozen warmwater shrimp from India,[2] and ordered the Department of Commerce ("Commerce" or "the Department") to "further explain or amend, its decision to consider the full amount of [Liberty Frozen Foods'] March 2008 bad debt write-off" in light of the apparently inconsistent decisions in Saccharin from the People's Republic of China, 68

---

[2] Certain Frozen Warmwater Shrimp from India, 75 Fed. Reg. 41,813 (Dep't Commerce July 19, 2010) (final results of antidumping duty administrative review, partial recission of review, and notice of revocation of order in part) ("Final Results"), and accompanying Issues & Decision Memorandum, A-533-840, ARP 08-09 (July 13, 2010), Admin. R. Pub. Doc. 310 ("I & D Mem.") (adopted in Final Results, 75 Fed. Reg. at 41,815).

Consol. Court No. 10-00231                                           Page 3

Fed. Reg. 27,530 (Dep't Commerce May 20, 2003) (notice of final determination of sales at less than fair value) ("Saccharin from PRC")[3] and Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, 75 Fed. Reg. 34,980 (Dep't Commerce June 21, 2010) (final results of the antidumping duty administrative review) ("Pipe from Korea II").[4] Liberty I, __ CIT at __, 791 F. Supp. 2d at 1256–57.  In the Final Results of Redetermination Pursuant to Court Remand, ECF No. 86 ("Remand Results"), Commerce reaffirmed its decision to include the full amount of the bad debt write-off in the calculation of indirect selling expenses consistent with its general practice of basing "indirect selling expenses on the amounts recorded in a company's books and records during the period under review." Remand Results at 4.  Commerce distinguished Saccharin from PRC and Pipe from Korea II as exceptions to the general rule applicable to facts not present in this case. Id. at 6–9.

As discussed below, the court affirms the Remand Results as neither arbitrary nor contrary to law because the Department sufficiently explains why its decision is consistent with Saccharin from PRC and Pipe from Korea II.

---

[3] See also Issues & Decision Memorandum, A-570-878, (May 20, 2003) ("Saccharin from PRC I & D Mem.") (adopted in Saccharin from PRC, 68 Fed. Reg. at 27,530).

[4] See also, Issues & Decision Memorandum, A-580-809, ARP 07-08 (June 14, 2010) ("Pipe from Korea II I & D Mem.") (adopted in Pipe from Korea II, 75 Fed. Reg. at 34,981).

Consol. Court No. 10-00231                                         Page 4

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and § 516A(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2) (2006).[5]

**BACKGROUND**

The facts necessary to the disposition of the remand are the following:[6]

Liberty Frozen Foods ("LFF") was chosen as a mandatory respondent for the fourth administrative review of certain frozen warmwater shrimp from India. Final Results, 75 Fed. Reg. at 41,813. The period of review ("POR") for the fourth administrative review was February 2008 to January 2009. Id. During the POR, in March 2008, LFF wrote-off the value of a sale for which full payment had never been received (the "bad debt write-off") as a year-end expense.[7] I & D Mem. Cmt. 5 at 17–18. When calculating LFF's indirect selling expenses, Commerce included the full value of this bad debt write-off. Id.

LFF challenged inclusion of the bad debt write-off's full value before Commerce, Id. Cmt. 5 at 20, and then before this

---

[5] All subsequent citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

[6] Familiarity with the court's prior decision is presumed.

[7] LFF's 2007–2008 fiscal year ran from February 2007 to March 2008.

Court, arguing that (1) the bad debt write-off should not be included in indirect selling expenses because it related to a transaction that occurred prior to the POR, and (2) if the bad debt write-off was included it should be prorated because LFF's fiscal year and the POR overlapped by only two months. Liberty I, __ CIT at __, 791 F. Supp. 2d at 1253–57.  The Court affirmed the Department's rejection of LFF's first argument, but, in light of apparently contradictory practices in Saccharin from PRC and Pipe from Korea II, remanded the Final Results to Commerce for further explanation of why the bad debt write-off was not prorated. Id. at 1255–57.

**STANDARD OF REVIEW**

"The court will sustain the Department's determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." Jinan Yipin Corp. v. United States, __ CIT __, 637 F. Supp. 2d 1183, 1185 (2009) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

**DISCUSSION**

As recognized in Liberty I, "an unexplained inconsistency in the application of a methodology is unlawful agency action." Liberty I, __ CIT at __, 791 F. Supp. 2d at 1256 (citing SKF USA

Consol. Court No. 10-00231                                                                       Page 6

Inc. v United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001); Pakfood Pub. Co. v. United States, __ CIT __, 724 F. Supp. 2d 1327, 1334 (2010)).  Following remand, the issue presented is whether Commerce has shown that its Remand Results are in accordance with law by sufficiently explaining the apparent inconsistencies between its methodology for calculating indirect selling expenses in this case and the methodologies employed in Saccharin from PRC and Pipe from Korea II.

Commerce first argues that its standard methodology for calculating indirect selling expenses, as exhibited in this case, is not to parse expenses into POR and non-POR components.

> When determining the total expenses incurred, the Department is not concerned with expenses recorded in specific months but rather the aggregate amount incurred over the POR.  Thus, as a general rule, the Department does not attempt to split expenses that are recorded on a semi-annual or annual basis into monthly amounts, nor does it analyze whether the component expenses are recorded in the months that the underlying activity took place. . . . Just as companies normally do not reflect such annual adjustments in quarterly, monthly or weekly terms, the Department, as a rule, does not attempt to pro-rate such adjustments . . . .

Remand Results at 4–5 (footnote omitted).  Rather, Commerce takes those expenses "actually recorded in the books and records of the respondent during the period of review," aggregates those expenses, and "then divide[s] those expenses by the total value of sales during the same period of time." Def.'s Resp. Pls.' Comments Regarding Remand Results at 15, ECF No. 97 ("Def.'s

Consol. Court No. 10-00231                                            Page 7

Reply Br."). This account accurately describes the methodology employed by Commerce in this case: (1) LFF recorded the bad debt write-off within the POR; (2) Commerce aggregated the bad debt write-off with the other expenses recorded during the POR; and (3) Commerce then divided the aggregate by the total value of sales for the POR.[8]

However, as Commerce explains in the Remand Results, the standard methodology is inadequate when the POR is incongruent with the period over which an expense is realized. It is this fact that distinguishes Saccharin from PRC and Pipe from Korea II as exceptions to the standard methodology.[9]

---

[8] LFF asserts in its Comments on the Remand Results that its depreciation expenses from the two fiscal years encompassing the POR were prorated to arrive at one year's worth of depreciation expenses in a method similar to that used in Pipe from Korea II, see infra pp. 10-11. Pl.'s Comments on Remand Results at 10, ECF No. 88 ("Pl.'s Comments"). However, LFF did not provide a citation to the relevant records, which would permit the court to review this claim. Therefore, the court will not consider this argument.

[9] The court notes that in cases where an exception does not apply, such as this one, Commerce's standard methodology does not permit it to capture expenses recorded after the POR has ended. Commerce acknowledged as much in the Remand Results:

> LFF's fiscal year runs from April through March. Thus, any adjusting entries made in March 2008 (at the end of the first fiscal year included in the POR) should be included in LFF's costs; any adjusting entries made in March 2009 ([at the end of] the [fiscal] year in which the remaining portion of the POR is included) should not be (and were not) reported.

Remand Results at 5 n.4. In light of this fact, the court finds

Consol. Court No. 10-00231                                                Page 8

In <u>Saccharin from PRC</u>, Commerce prorated a bad debt expense recorded as a year-end expense outside the six-month period of investigation ("POI").[10] In cases like <u>Saccharin from PRC</u> that involve a six-month POI/POR year-end expenses may go entirely uncaptured using the standard methodology for calculating indirect selling expenses. This is not because relevant expenses are recorded outside the POI/POR; rather, it is because the POI/POR encompasses a span of time that does not overlap with any year-end recording periods. <u>See</u> <u>Remand Results</u> at 7, 7 n.5.

---

unpersuasive Commerce's argument that including the full expense when it is recorded is necessary to capture expenses relevant to the POR. Had LFF waited another year, until March 2009, to write-off its bad debt expense, the expense would not have been captured because LFF was not chosen as a mandatory respondent in the fifth administrative review of this Order. <u>See</u> <u>Certain Frozen Warmwater Shrimp from India</u>, 76 Fed. Reg. 41,203, 41,205 (Dep't Commerce July 13, 2011) (final results of antidumping duty administrative review, partial rescission, and final no shipment determination). Thus, while it is true on the facts of this case that "if these expenses are not included in the analysis for the period under consideration, they would never be captured in the calculation of LFF's margin although they clearly pertain," <u>Remand Results</u> at 16, Commerce's chosen methodology is no guarantee that an expense which pertains to the POR will be captured during that POR.

[10] Commerce noted in <u>Saccharin from PRC</u> that,

> Suzhou booked bad debt into its financial statements at the end of the fiscal year (outside the POI). However, this choice was made solely as a matter of completing the books for the year. We will divide these expenses by two and attribute half to the POI (the first half of the calendar year).

<u>Saccharin from PRC I & D Mem.</u> Cmt. 10 at 20 n.5.

Consol. Court No. 10-00231                                              Page 9

Because a six-month POI/POR may not capture *any* year-end expenses, an exception to the standard methodology that permits inclusion of certain expenses recorded outside the POI/POR is necessary to prevent a distortive undercounting due to expenses being "omitted completely from the reported costs 'solely as a matter of [when the respondent completed its books for the year].'" <u>Id.</u> at 7 (alternation in original) (quoting <u>Saccharin from PRC I & D Mem.</u> Cmt. 10 at 20 n.5).

    A second exception is then necessary to prevent overstating the value of year-end expenses in calculations involving a truncated POI/POR, i.e., to prevent including a full year's expenses in a six-month POI/POR.  Therefore, the year-end expenses are properly, and exceptionally, prorated in such cases to prevent a distortion through overcounting.

    Commerce clearly articulated the <u>Saccharin from PRC</u> exception in footnote seven of the <u>Remand Results</u>:

> If those companies [that record depreciation expenses only at the end of the fiscal year] were investigated or reviewed and the POI or POR was less than a year, the Department would not include a full year's worth of depreciation expenses in its calculations. Rather, if the truncated POI/POR precedes the month in which the companies' year end adjustments were made, the Department would attribute, on a *pro rata* basis, a portion of these expenses to the POI/POR because it would be distortive to include no depreciation expenses in the analysis. Similarly, if the companies' fiscal year ended within a truncated POI/POR, it would be distortive to include a full year's depreciation to that truncated POI/POR. In that situation, the Department would therefore include only a portion of

Consol. Court No. 10-00231                                        Page 10

    the depreciation expenses.

Id. at 7 n.7.

    LFF reads footnote seven differently, concluding that "[t]he Department's argument that it does not parse expenses into POR and non-POR elements is directly contradicted by its own examples." Pl.'s Comments at 4.  LFF's argument is misguided on two accounts: (1) LFF reads the exception as the rule, and (2) it fails to appreciate the significance of the modifier "truncated." As discussed above, a truncated POR presents circumstances that require exceptions, including both provisions for capturing year-end expenses to prevent undercounting distortions and prorating year-end expenses to prevent overcounting distortions.

    Pipe from Korea II presents a distinct but related difficulty for the standard methodology.  Unlike Saccharin from PRC, Pipe from Korea II did not involve a truncated POR.  The POR was one year, but the record contained two years worth of bad debt expense data.  Thus, as Commerce plainly and accurately stated in that case, "including the entire allowance of doubtful accounts from both years would result in overstating the bad debt allowance." Pipe from Korea II I & D Mem. Cmt. 4 at 22.  With two years of bad debt expenses on the record of a one year POR, Commerce prorated the two years of data to arrive at a non-distortive amount consistent with the POR — a reasonable

Consol. Court No. 10-00231                                              Page 11

deviation from the standard methodology on these facts.[11]

Nor does LFF's reliance on <u>Certain Preserved Mushrooms from India</u>, 68 Fed. Reg. 41,303 (Dep't Commerce July 11, 2003) (final results of antidumping duty administrative review) ("<u>Mushrooms from India</u>"),[12] undermine Commerce's reasoned distinctions in <u>Saccharin from PRC</u> and <u>Pipe from Korea II</u>. <u>See</u> Pl.'s Comments at 4–5. In <u>Mushrooms from India</u>, a respondent requested that Commerce offset its financial expenses by the full amount of a recorded gain from debt restructuring. <u>Mushrooms from India I & D Mem.</u> Cmt. 13 at 20. Commerce declined to credit respondent the entire amount of the gain during the POR at issue, arguing that

> [i]t is the Department's practice to offset financial expenses only with the current portion of gain on debt restructure. . . .  The benefit of the restructured debt covers multiple accounting periods through the maturity of the loan.  [Respondent's] reporting

---

[11] Commerce also distinguishes <u>Pipe from Korea II</u> from the instant case on the basis that <u>Pipe from Korea II</u> involved a bad debt provision, whereas the instant case involves a bad debt write-off: "[T]here is a meaningful difference between a provision for bad debt and a one-time write-off. . . . As a set-aside in anticipation of periodic expenses, rather than a one-time recognition of a specific expense, a provision is more appropriate to pro-rate than a direct write-off." Def.'s Reply Br. at 11.  The court need not decide whether Commerce's statement is accurate to resolve the case before it.  Rather, it is sufficient to note that <u>Pipe from Korea II</u> is distinguishable from the instant case *both* because it involved a bad debt provision and because the two years of bad debt expense data presented a danger of double counting.

[12] <u>See also</u> the accompanying <u>Issues & Decision Memorandum</u>, A-533-813, ARP 01-02 (July 11, 2003) ("<u>Mushrooms from India I & D Mem.</u>") (adopted in <u>Mushrooms from India</u>, 68 Fed Reg. at 41,303).

>     methodology is distortive in that it recognizes the
>     entire gain in the year of restructure, when, in fact,
>     multiple accounting periods will benefit from the
>     restructured debt.

Id. (citations omitted).

The reasoning in Mushrooms from India is consistent with the Department's position articulated in the Remand Results of this case.  Like Saccharin from PRC and Pipe from Korea II, in Mushrooms from India the financial data at issue (here a gain rather than an expense) was not coterminous with the POR.  Because the gain related to a term ("multiple accounting periods") that exceeded the POR, Commerce "included as an offset to the financial expenses the portion of the gain that is current to this POR." Id. Cmt. 13 at 20-21.  Contrary to LFF's argument, Mushrooms from India provides further support to the Department's articulation of its standard methodology and the necessity of certain exceptions, as also recognized in Saccharin from PRC and Pipe from Korea II.

With its standard methodology for calculating indirect selling expenses, Commerce seeks to capture and aggregate one year's worth of such expenses to accurately reflect the one year length of the POR.  Thus, when year-end expenses are recorded during the POR, it is reasonable for Commerce to include the full expense.  However, when the expense is incongruous with the POR, it is reasonable and consistent for Commerce to avoid distortion

Consol. Court No. 10-00231 Page 13

by adjusting its policy to prevent either undercounting or overcounting.  The Remand Results are consistent with this reasonable explanation.

## CONCLUSION

For all the foregoing reasons, the Department's Final Results, 75 Fed. Reg. 41,813, as explained by the Remand Results, will be affirmed.

Judgment will be entered accordingly.

It is **SO ORDERED**.

                                         /s/ Donald C. Pogue
                                   Donald C. Pogue, Chief Judge

Dated: February 21, 2012
      New York, New York

Slip Op. 12 - 22

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LIBERTY FROZEN FOODS PRIVATE, LIMITED, *et al.*, | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Before: Donald C. Pogue, Chief Judge |
| Defendant, | |
| and | Consol.[1] Court No. 10-00231 |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, AMERICAN SHRIMP PROCESSORS ASSOCIATION, and DEVI SEA FOODS LIMITED, | |
| Defendant-Intervenors. | |

### JUDGMENT

The court having heard and decided this matter, now in accordance with that opinion, the Department of Commerce's <u>Final Results</u>, 75 Fed. Reg. 41,813, as further explained by the <u>Final Results of Redetermination Pursuant to Court Remand</u>, ECF No. 86, are affirmed.

                                             /s/ Donald C. Pogue
                                   Donald C. Pogue, Chief Judge

Dated: February 21, 2012
     New York, New York

---

[1] This action was consolidated with Court No. 10-00237, which was subsequently dismissed. Order, Mar. 1, 2011, ECF No. 53.